UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| AKBAR ZAIDI, | ) |
| | ) |
| | ) |
| Plaintiff, | ) Case No. 1:21 CV 138 ACL |
| | ) |
| vs. | ) |
| | ) |
| THE BANK OF MISSOURI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff filed this action against Defendant The Bank of Missouri ("BOM"), alleging Defendant violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA") when it failed to correct and update information on Plaintiff's credit report.  Presently pending before the Court is Defendant's Motion to Dismiss Amended Complaint.  (Doc. 23.)  The motion is fully briefed and ready for disposition.

## BACKGROUND

Taken as true for the purpose of the pending motion, the facts alleged in the Amended Complaint are as follows:

In January 2018, Plaintiff discovered that his identify was stolen in late 2017.  He filed a police report on January 16, 2018.  (Plaintiff's Exhibit A, Doc. 20-1.)  Plaintiff discovered that a Total Visa card was issued by BOM to the fraudulent individual.  He subsequently learned that two payments were made to Defendant in the amounts of $250 and $232.29.  Plaintiff disputed these charges with Capital One, and Capital One verified that the charges were fraudulent and made to a fraudulent card.  On or about January 30, 2018, Plaintiff contacted BOM's fraud

1

department and advised that he did not apply or use a Total Visa card through BOM. He included a copy of the police report.

In December 2020, Plaintiff applied to a mortgage company, with the intent to refinance one home loan at a lower interest rate and cash out the equity; and to take out a mortgage on a fully paid second home, so that he could cash out the equity. BOM was reporting two accounts to Plaintiff's credit for the charges he had reported were fraudulent. Plaintiff disputed the alleged debt with both BOM and National Credit Adjusters, LLC. In response, National Credit Adjusters, LLC closed the account and removed it from Plaintiff's credit.

BOM did not remove the alleged debt from Plaintiff's credit report. BOM had updated the account to Plaintiff's credit report in November 2018, with information including a credit limit and highest balance. Plaintiff states that he did not contract to have a credit limit, nor did he have a balance with Defendant. Plaintiff alleges that BOM also advised that it had sold the account to JTM Capital, despite the account clearly being fraudulent.

On February 17, 2021, Plaintiff disputed the alleged debt with both Equifax Information Services, LLC, and Trans Union, LLC. BOM replied that the alleged debt is valid, and that Plaintiff is liable for the alleged debt. (Plaintiff's Exhibit B, Doc. 20-2.) BOM continues to report the alleged debt. Plaintiff alleges that he has been unable to refinance his two homes due to this incorrect credit reporting. He has attached a letter from a mortgage company explaining he lacked the minimum credit score to apply for a loan. (Plaintiff's Exhibit C, Doc. 20-3.)

In the sole count of the Amended Complaint, Plaintiff argues that Defendant BOM violated § 1681s-2(b) of the FCRA, which imposes a duty to correct and update credit information. Plaintiff claims that Defendant violated this provision by failing to conduct an investigation with respect to the disputed information after being notified by the credit reporting

agencies of such a dispute.  He claims that Defendant failed to: review all relevant information, conduct a reasonable investigation, and report accurate results of an investigation.  Had it conducted a review of the relevant information, Plaintiff claims Defendant would have found that the information was both incomplete and inaccurate.  Plaintiff alleges that he suffered damage by the loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain and embarrassment of credit denials.  He contends that Defendant's conduct was willful, rendering it liable for actual or statutory damages and punitive damages.  Plaintiff argues in the alternative that Defendant was negligent, entitling Plaintiff to recover actual damages.

On January 3, 2022, Defendant BOM filed a Motion to Dismiss, in which it argues Plaintiff's Amended Complaint fails to state a claim upon which relief may be granted.  Plaintiff opposes the Motion.

## **LEGAL STANDARD**

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Pre-Filled Propane Tank Antitrust Litig.,* 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts all factual allegations as true and construes all reasonable inferences in the light most favorable to the nonmoving party.  *Usenko v. MEMC LLC,* 926 F.3d 468, 472 (8th Cir. 2019).  The Court need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts.  *Waters v. Madson,* 921 F.3d 725, 734 (8th Cir. 2019).  The complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.,* 865 F.3d 1054, 1057 (8th Cir. 2017) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 544, 678 (2009) (internal quotation marks omitted). A facially plausible claim is one "that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dep't of Human Servs.,* 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation omitted). This "standard asks for more than a sheer possibility that a defendant has acted unlawfully, or more than a mere possibility of misconduct." *Id.*

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted). The Court will treat the documents attached to the Amended Complaint as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

## **DISCUSSION**

Defendant argues that Plaintiff's allegations demonstrate that BOM conducted its statutory obligations under § 1681s-2(b), because it investigated and provided the results of its investigation to Equifax. Defendant contends that the FCRA does not require BOM to correct or update a report that was accurate at the time that it was issued. Defendant further argues that BOM cannot plausibly be liable for Plaintiff's alleged damages.

Plaintiff responds that he has properly pled a claim because the information reported by BOM was *not* accurate at the time it was reported. Plaintiff argues that, despite having the police report, Plaintiff's statement regarding the incident, and the contact information of the

4

investigating officer, BOM refused to remove or update the information. Regarding damages, Plaintiff argues that he has sufficiently pled actual damages. He argues in the alternative that he has properly claimed that Defendant acted willfully, thereby obviating the need to prove actual damages.

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To that end, the FCRA regulates not only credit reporting agencies ("CRAs"), like Experian and Equifax, but also those who "furnish" consumer data to CRAs, like BOM here. *See* 15 U.S.C. § 1681s-2; *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) (noting that Congress began regulating furnishers under the FCRA in 1996 because of "an identified gap in the FCRA's coverage, whereby even dutiful investigations of consumer disputes by CRAs could be frustrated by furnishers' irresponsible verification of inaccurate information, without legal consequence to the furnishers").

Specifically, the statute requires "furnishers" to "provide accurate information" to CRAs, *see* 15 U.S.C. § 1681s-2(a), and then, if informed by a CRA that a consumer is disputing any information appearing on their credit report, "conduct an investigation with respect to the disputed information," *see id.* § 1681s-2(b). "If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified," the furnisher must "promptly" "modify," "delete," or "permanently block the reporting of" "that piece of information." *See id.* § 1681s-2(b)(1). If a furnisher fails to discharge its duties under § 1681s-2(b), the consumer may sue the furnisher for money damages. *See Johnson v. Collecto, Inc.*, 127 F. Supp.3d 1012, 1017 (D. Minn. 2015).

5

In determining whether a furnisher violated § 1681s-2(b), courts first ask whether the furnisher "conduct[ed] a *reasonable* investigation of their records to determine whether the disputed information can be verified." *Id.* (emphasis in original); *accord Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 908 (8th Cir. 2011).  Although the Eighth Circuit has not had an opportunity to expound on this standard, circuit courts across the country have generally held that, though a "reasonable investigation" will "vary depending on the circumstances of the case ... and on the quality of the documentation available to the furnisher," *Hinkle v. Midland Credit Mgm't, Inc.*, 827 F.3d 1295, 1301-02 (11th Cir. 2016), it must be "a fairly searching inquiry, or at least something more than a mere cursory review," *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012); *accord Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014); *Chiang*, 595 F.3d at 38; *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009); *Johnson v. MBNA Am. Bank, N.A.*, 357 F.3d 426, 430 (4th Cir. 2004).  For instance, "[w]hen a furnisher has access to dispute-related information beyond the information provided by the CRA, it will often be reasonable for the furnisher to review that additional information and conduct its investigation accordingly." *Hinkle*, 827 F.3d at 1306 (citing *Gorman*, 584 F.3d at 1157 n.11).

Here, Plaintiff alleges that he disputed the alleged debt with both Equifax and Trans Union on February 17, 2021.  Equifax sent this dispute to BOM, therefore triggering BOM's investigative duties under § 1681s-2(b).  (Doc. 20-2.)  In response, BOM verified the disputed information as accurate.  *Id.* at p. 5.  BOM provided the additional information:  the account was a "Charge Off," with a balance of "$0", and a "Date of Major Delinquency 1st Reported" in March 2018, that had been sold to JTM Capital Management LLC.  *Id.*  Plaintiff argues that the information reported by BOM "was incorrect at the time it was reported."  (Doc. 20 at p. 4.)  The

information "did not later become incorrect or change, but the account was never owed by Plaintiff, and as such, the information was incorrect as of its reporting date." *Id.*  He alleges that a "police report, as well as confirmation of debit charge backs, and the contact information to the investigating officer, would lead any reasonable person to have substantial doubts about the accuracy of the information being reported." *Id.* at 5.  Plaintiff therefore alleges that BOM did not conduct a reasonable investigation of the disputed information after being notified by the CRAs of the dispute, in violation of § 1681s-2(b).  *Id.* at 7.  Based on these allegations, the Court finds that Plaintiff sufficiently alleged a claim under § 1681s-2(b).

Defendant argues that Plaintiff claims BOM violated its duty to investigate "because it must have ignored information that [Plaintiff] provided directly to BOM almost three years earlier."  (Doc. 26 at 2.)  Defendant contends that a furnisher's earlier possession of information that it received directly from the consumer "cannot later cause the furnisher to violate its duty to reasonably 'investigate' upon receiving notice from a CRA." *Id.*  Although Defendant correctly states the law, it mischaracterizes Plaintiff's argument.  Plaintiff's claim is not related to Defendant's actions after Plaintiff notified BOM of the identity theft in January 2018 nor does it rely upon BOM's earlier possession of information.  Instead, Plaintiff argues that BOM failed to perform a reasonable investigation in February 2021, *after being notified by the CRAs of the dispute*.  The police report, along with other evidence, was relevant in verifying the disputed debt.  It could have been obtained as part of BOM's reasonable investigation of Plaintiff's claim of identity theft.

Moreover, the determination of "[w]hether a defendant's investigation is reasonable [under § 1681s-2(b)] is a factual question normally reserved for trial[,]" *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005), and the reasonableness of an investigation will

depend on the information the furnisher receives from the credit reporting agencies concerning the nature of the consumer's dispute. *Edeh v. Midland Credit Mgmt., Inc.*, 413 F. App'x 925, 926 (8th Cir. 2011); *Chiang,* 595 F.3d at 38.  As such, Plaintiff's allegation that BOM conducted an unreasonable investigation and failed to remove incorrect information—namely that the account in question was not his—is sufficient to defeat a motion to dismiss for failure to state a claim.  Plaintiff is entitled to discovery on what the creditors' notices stated and what investigation BOM conducted.  *See, e.g., Anderson,* 631 F.3d at 908 ("Because a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b) arises when it receives a notice of dispute from a CRA, it need investigate only what it learned about the nature of the dispute from the description in the CRA's notice of dispute.")

Defendant also argues that BOM cannot be liable for Plaintiff's alleged damages (his inability to refinance his two homes), because the damages were not caused by BOM's purported FCRA violation.  Defendant notes that its duty to investigate was not triggered until February 17, 2021, which was after the mortgage company sent the denial letter to Plaintiff on February 9, 2021.  Defendant argues that it cannot be liable for damages allegedly suffered by Plaintiff before BOM's duties to investigate under the FCRA were triggered.

Plaintiff responds that he has clearly asserted the direct causal relationship between his damages and Defendant's actions.  He argues that, had BOM removed the erroneous reporting upon the completion of a reasonable investigation, Plaintiff could have proceeded with his refinancing.  Plaintiff further argues that he need not demonstrate actual damages because he has properly claimed BOM acted willfully.  In the Amended Complaint, Plaintiff alleges that BOM's "conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and

punitive damages in an amount to be determined by the Court…In the alternative, BOM was negligent entitling the Plaintiff to recover actual damages…" (Doc. 20 at 8.)

The undersigned finds that Plaintiff's allegations are sufficient at this stage to state a claim that Defendant acted in willful or negligent noncompliance of the FCRA.  Although the allegations may seem factually bare, "[i]nformation about the precise nature of the investigation is uniquely in the hands of [Defendant].  Plaintiff[ ] cannot be expected to have much more information about the reasonableness of the investigation at this stage of the litigation than [he] has stated in [his] complaint." *Williams v. Bayview Loan Servicing, LLC*, No. 14-CV-07427, 2016 WL 8711209, *6 (E.D.N.Y. Jan. 22, 2016).  Defendant's arguments are more appropriately made in a motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 23) is **denied**.

/**s**/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of April, 2022.